**Eddie Forest DODGENS, Plaintiff,**

v.

**The KENT MANUFACTURING COMPANY, Defendant.**

**CA No. 8:95–2180–20AK.**

United States District Court,
D. South Carolina,
Anderson Division.

Feb. 20, 1997.

Edwin L. Turnage, Travelers Rest, SC, for plaintiff.

Andreas N. Satterfield, Jr. and Ellison F. McCoy, Greenville, SC, for defendant.

## ORDER

HERLONG, District Judge.

This matter is before the court with the Report and Recommendation of the United States Magistrate Judge, made in accordance with 28 U.S.C. § 636(b) and Local Rule 19.02 DSC. The recommendation has no presumptive weight, and the responsibility for making a final determination remains with the United States District Court. *Mathews v. Weber,* 423 U.S. 261, 96 S.Ct.

549, 46 L.Ed.2d 483 (1976). The court is charged with making a de novo determination of those portions of the Report and Recommendation to which specific objection is made. The court may accept, reject, or modify, in whole or in part, the recommendation made by the magistrate judge or recommit the matter to him with instructions. 28 U.S.C. § 636(b)(1).

The plaintiff, Eddie Forest Dodgens ("Dodgens"), alleges causes of action pursuant to the Americans with Disabilities Act of 1990 ("ADA"), the Family and Medical Leave Act of 1993 ("FMLA"), breach of contract, breach of implied covenant of good faith and fair dealing, and breach of contract accompanied by a fraudulent act. The defendant, Kent Manufacturing Company ("Kent"), filed a motion for summary judgment. In his Report and Recommendation, United States Magistrate Judge William M. Catoe, Jr. recommends granting summary judgment on all claims except Dodgens's claim pursuant to the FMLA. Each party filed objections to the portions of the Report and Recommendation that were adverse to them.

Dodgens is a former employee of Kent. At the time of his termination, Dodgens was a third-shift supervisor in the drawing department. His responsibilities included overseeing two pin-drafter operators and two roving machine operators. Basically, Dodgens was supposed to inform the operators as to which material they were to use and to monitor them to ensure that the material was blended properly. Kent contends that six months prior to his termination, Dodgens was confronted about weighing and blending problems that had occurred under his supervision. Approximately two months prior to his termination, Dodgens underwent knee surgery and took a six-week medical leave.

During his leave, Dodgens was contacted twice by the plant manager, Johnny Miller ("Miller"), who requested Dodgens to take a demotion when he returned. Kent contends that Miller contacted Dodgens because the drawing department which Dodgens used to supervise was "running the best it had run" under David Griggs's supervision. Dodgens refused the demotion and remained on medi-

cal leave until his doctor certified that he could return to work.

On his second day back at his previous position, Dodgens's supervisor, Jamie Anthony ("Anthony"), informed Dodgens that management was watching him and that he would be fired for any mistakes. Shortly thereafter, a blending error occurred which was caught by Anthony. A second error occurred the following day. The error involved improper mixing of materials and ultimately caused Kent to suffer a loss ranging from five thousand one hundred forty three dollars ($5,143) to twelve thousand six hundred dollars ($12,600). The specific amount is contested by the parties. As a result of this error, Dodgens and one of the operators under his supervision were terminated. This action followed.

### ADA CLAIM

Title I of the ADA prohibits an employer from discriminating against a qualified individual with a disability. In *Ennis v. National Ass'n of Bus. & Educ. Radio, Inc.*, 53 F.3d 55 (4th Cir.1995), the Fourth Circuit Court of Appeals set forth the elements of an ADA claim. To establish a prima facie case under the ADA, the plaintiff must prove by a preponderance of the evidence that: (1) he was in a protected class; (2) he was discharged; (3) at the time of the discharge, he was performing his job at a level that met his employer's legitimate expectations; and (4) his discharge occurred under circumstances that raise a reasonable inference of unlawful discrimination. *Id.* at 58.

Applying the appropriate summary judgment standard, Magistrate Judge Catoe correctly found that Dodgens cannot show he is a member of the protected class. To be a member of the protected class, Dodgens must show that he has a disability. An individual suffers from a disability if he has a physical or mental impairment that substantially limits one or more major life activities. 42 U.S.C. § 12102(2)(A). The regulations define "physical or mental impairment" as "[a]ny physiological disorder, or condition ... affecting one or more of" various body systems. 29 C.F.R. § 1630.2(h)(1). "Major life activities" are defined as "caring for one-

self, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, and working." 29 C.F.R. § 1630.2(i).

Dodgens claims that his knee injury substantially limits his major life activity of walking. The court disagrees. According to Dodgens's doctor, his disability rating is only fifteen percent. Dodgens's orthopaedist stated that he is able to walk in substantially the same manner as the average person and that he is not significantly restricted in any way in his ability to walk. Furthermore, the interpretive guidelines of the ADA provide that an individual who, as a result of a physical impairment, can walk only at a moderately below-average speed is not substantially limited in the major life activity of walking. 29 C.F.R. § 1630.2(j) app. at 340; *see also Blanton v. Winston Printing Co.*, 868 F.Supp. 804 (M.D.N.C.1994) (finding that a tear of the medial meniscus in the knee, the exact same injury suffered by Dodgens, did not constitute a disability under the ADA). Therefore, Dodgens has failed to produce sufficient evidence to withstand the motion for summary judgment on his ADA claim.

## FMLA CLAIM

The FMLA provides eligible employees of a covered employer the right to take unpaid leave for a period of up to twelve work weeks in any twelve-month period for a serious health condition. 29 U.S.C. § 2612(a)(1)(D); *see* 29 C.F.R. § 825.100. In general, the FMLA entitles eligible employees (1) to take up to twelve weeks of unpaid leave in qualifying situations, (2) to the right to maintain health benefits and other employment-related benefits while on leave, and (3) to the right to be reinstated to their previous position or an equivalent position at the end of the leave. 29 U.S.C. §§ 2612, 2614. The FMLA makes it unlawful for an employer to interfere with, restrain, or deny the exercise of any of these rights. 29 U.S.C. § 2615(a)(1). In this case, it is undisputed that Dodgens was permitted to take leave until being certified to return to work without restrictions by his doctor, that he was allowed to maintain his medical benefits and other company benefits while on leave, and that he was reinstated to the position that he

held when the leave commenced. (Pl.'s Dep. at 119.)

Despite these facts, Dodgens first contends that Miller, as an employee of Kent, unlawfully interfered with his rights under the FMLA by calling him twice and requesting that he take a demotion. Second, Dodgens asserts that Kent interfered with his FMLA rights by failing to provide him with literature describing the benefits and leave rights guaranteed by the FMLA. Kent admits that, pursuant to the FMLA, it failed to provide an explanation of the FMLA in its handbook and failed to inform Dodgens of his FMLA leave rights when a request for leave was made. (Def.'s Reply Mem. at 13); *see* 29 C.F.R. § 825.301(a)(1); 29 C.F.R. § 825.301(b)(1).

■ The FMLA regulations issued by the Department of Labor state that the terms "interfering with" the exercise of an employee's rights under the FMLA would include violating the FMLA, refusing to authorize FMLA leave, discouraging an employee from taking FMLA leave, and manipulating the work force to avoid responsibilities under the FMLA. 29 C.F.R. § 825.220(b). As an administrative agency, the Department of Labor's construction of the statute is entitled to "controlling weight unless it is plainly erroneous or inconsistent with the regulation." *Bowles v. Seminole Rock & Sand Co.*, 325 U.S. 410, 414, 65 S.Ct. 1215, 1217, 89 L.Ed. 1700 (1945). The court finds that the Department of Labor's interpretation of the terms "interfering with" is not plainly erroneous or inconsistent with the regulation. As such, Dodgens's claim that his FMLA rights were "interfered with" when Miller called him twice during his medical leave and requested that he take a demotion does not state a cognizable claim under the FMLA. Therefore, as to this specific allegation, Dodgens's claim fails as a matter of law.

■ Kent has clearly violated the FMLA by failing to explain the FMLA benefits and leave rights to Dodgens in its employee handbook or at the time Dodgens requested leave. As 29 C.F.R. § 825.220(b) states, a

violation of the FMLA constitutes interference with FMLA rights. In this case, however, the court would be elevating form over substance to permit this claim to go forward in light of the fact that Dodgens received all of the leave benefits that he was guaranteed pursuant to the FMLA. Accordingly, the court awards summary judgment to Kent on this specific allegation as well.

■ Dodgens's third claim under the FMLA is that he was terminated for exercising his right to take medical leave. The magistrate judge concluded that, in this situation, the FMLA provides a cause of action for retaliatory discharge. The magistrate judge also determined that a genuine issue of material fact existed concerning Dodgens's termination in the context of his FMLA claim. *See* (Mag. Judge's Rep. & Rec. at 9–10.) The issue of material fact that concerned the magistrate judge was whether Dodgens's termination was a result of his having taken medical leave. (Mag. Judge's Rep. & Rec. at 11.)

The FMLA contains two provisions that prevent retaliation by employers. First, § 2615(a)(2) provides that "[i]t shall be unlawful for any employer to discharge or in any other manner discriminate against any individual for opposing any practice made unlawful by this subchapter." 29 U.S.C. § 2615(a)(2).

Second, § 2615(b) provides the following prohibition:

It shall be unlawful for any person to discharge or in any other manner discriminate against any individual because such individual—

(1) has filed any charge, or has instituted or caused to be instituted any proceeding, under or related to this subchapter;

(2) has given, or is about to give, any information in connection with any inquiry or proceeding relating to any right provided under this subchapter; or

(3) has testified, or is about to testify, in any inquiry or proceeding relating to any right provided under this subchapter.

29 U.S.C. § 2615(b). Even though neither section specifically refers to retaliatory discharge for receiving FMLA leave, 29 C.F.R.

§ 825.220(c) interprets these sections as providing that "[a]n employer is prohibited from discriminating against employees or prospective employees who have used FMLA leave." "[E]mployers cannot use the taking of FMLA leave as a negative factor in employment actions, such as hiring, promotions, or disciplinary actions." *Id.* Therefore, Dodgens has a cause of action for retaliatory discharge.

Having determined that the FMLA provides a cause of action based on retaliatory discharge for receiving FMLA leave, the court is faced with determining what a plaintiff must prove in order to prevail under this claim.

In *Oswalt v. Sara Lee Corp.,* 889 F.Supp. 253 (N.D.Miss.1995), the district court held:

Although there are no set guidelines to establish a prima facie case for wrongful termination under the FMLA, the court finds that ... [t]he plaintiff must produce evidence that he or she is protected under the FMLA, that he or she suffered an adverse employment decision, and either that the plaintiff was treated less favorably than an employee who had not requested leave under the FMLA or that the adverse decision was made because of the plaintiff's request for the leave.

*Id.* at 259.

In *McCown v. UOP, Inc.,* No. 94 C 2179, 1995 WL 519818 (N.D.Ill. Aug. 30, 1995) (unpublished), the district court addressed the plaintiff's claim of denial of her FMLA rights and wrongful discrimination and interference with her FMLA rights. The district court stated:

Because the FMLA took effect only two years ago, there is only one reported decision in a case in which the plaintiff was discharged after requesting (and receiving) leave under the FMLA. *Oswalt v. Sara Lee Corp.,* [889 F.Supp. 253 (N.D.Miss. 1995), *aff'd,* 74 F.3d 91 (5th Cir.1996) ]. As a result, there is no precedent regarding the analysis to be employed on summary judgment in cases brought under the FMLA. However, UOP proposes that we use the analysis that has been developed in Title VII and age discrimination cases, and

we agree that it is the appropriate analysis here.

*Id.* at *4. The district court used the burden-shifting analysis articulated in *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 802–03, 93 S.Ct. 1817, 1824–25, 36 L.Ed.2d 668 (1973). However, the court relied on the Seventh Circuit's law of sex discrimination rather than retaliatory discharge to determine what elements the plaintiff had to show in order to make out a prima facie case under the FMLA. *McCown,* 1995 WL at *4.

In *Urbano v. Continental Airlines, Inc.,* No. CIV.A. H–95–3508, 1996 WL 767426 (S.D.Tex. Nov. 1, 1996) (unpublished), the district court found that:

> As to the retaliatory discharge claim, the FMLA makes it unlawful for an employer "to discharge or in any other manner discriminate against any individual for opposing any practice made unlawful by this subchapter." 29 U.S.C. § 2915(a)(2). As to the elements of proof, the FMLA provides that "[n]othing in this Act ... shall be construed to modify or affect any Federal or State law prohibiting discrimination on the basis of [protected classifications]." 29 U.S.C. § 2615(a). Thus, the Court assumes that the analysis used in Title VII retaliatory discharge claims also applies to Plaintiff's FMLA claim.

*Id.* at *4. The district court went on to list the elements of a prima facie case of retaliatory discharge under Title VII in the Fifth Circuit.

■ The United States Court of Appeals for the Fourth Circuit has not addressed this issue, but the court is persuaded by *Oswalt* and *Urbano.* Accordingly, if Dodgens has a cognizable claim pursuant to the FMLA, then the appropriate analysis for retaliatory discharge under the FMLA is that provided in Title VII for retaliatory discharge.

■ To prove a prima facie case of retaliatory discharge in violation of Title VII, an employee must show that: "1) the employee engaged in protected activity; 2) the employer took adverse employment action against the employee; and 3) a causal connection existed between the protected activity and the adverse action." *Egbuna v.*

*Time–Life Libraries, Inc.,* 95 F.3d 353, 355 (4th Cir.1996). Viewing the facts in the light most favorable to the plaintiff, the court finds that Dodgens is unable to satisfy the third element of a prima facie case of retaliatory discharge. During Dodgens's twenty-two years of employment with Kent, he took at least fifteen leaves of absence, ranging in length from a few days to three months. (Pl.'s Dep. at 85–95.) In addition, from the date of the enactment of the FMLA in August, 1993, until the date that Kent's motion for summary judgment was filed, Kent has granted at least one hundred twenty-nine FMLA leaves of absence and, in each case, has reinstated the employee to his or her position in accordance with the terms of the FMLA. (Miller Aff. ¶ 4.) Also, during that same time period, Kent granted at least sixty-four leaves of absence to employees who did not qualify for leave under the FMLA. (Miller Aff. ¶ 5.) Therefore, the court concludes that, on the facts of this case, a reasonable jury would be unable to find that a causal connection existed between Dodgens's medical leave and his termination. Consequently, the court finds that Dodgens has failed to raise a genuine issue of material fact regarding retaliatory discharge for receiving FMLA leave and that summary judgment is appropriate on this claim.

## BREACH OF CONTRACT CLAIMS

■ Dodgens also claims that Kent breached his employment contract that was created by an employee handbook. South Carolina courts recognize that either party may terminate the employment, at any time, for any reason or no reason at all, without incurring liability. *Culler v. Blue Ridge Elec. Co-op., Inc.,* 309 S.C. 243, 422 S.E.2d 91, 92 (1992). However, an employer may alter an employee's at-will status by establishing mandatory policies that constitute an implied contract. *Small v. Springs Indus., Inc.,* 292 S.C. 481, 357 S.E.2d 452, 454–55 (1987). Dodgens claims that the Kent employee handbook has altered his at-will status by creating an implied contract.

After reviewing the record, the court finds that, viewing the evidence in the light most favorable to Dodgens, Kent did not alter his

at-will status with its employee handbook. Therefore, the court grants Kent summary judgment on this issue.

## BREACH OF COVENANT OF GOOD FAITH AND FAIR DEALING AND BREACH OF CONTRACT ACCOMPANIED BY A FRAUDULENT ACT

In every contract, including employment contracts, there is an implied covenant of good faith and fair dealing. *Shelton v. Oscar Mayer Foods Corp.*, 319 S.C. 81, 459 S.E.2d 851 (Ct.App.1995). As the magistrate judge correctly points out, however, a cause of action for breach of an implied covenant of good faith and fair dealing cannot be recognized absent proof of an underlying contract. Similarly, breach of contract accompanied by a fraudulent act also requires proof of an underlying contract. In light of the court's previous finding, summary judgment must also be granted on both of these claims.

Accordingly, for the foregoing reasons, it is

**ORDERED** that Kent's motion for summary judgment is granted as to all claims.

**IT IS SO ORDERED.**