## 23700

Gerald CULLER, Appellant v. BLUE RIDGE ELECTRIC
COOPERATIVE, INC., Respondent.

(422 S.E. (2d) 91)

Supreme Court

*Hal J. Warlick,* Easley, *for appellant.*

*G. Edward Welmaker* and *Henry F. Floyd,* Pickens, *for respondent.*

Heard April 7, 1992.

Decided August 31, 1992.

TOAL, Justice:

This is an action for wrongful discharge. Gerald Culler ("Culler") appeals the trial judge's order in favor of Blue Ridge Electric Cooperative ("Blue Ridge"). We affirm.

## FACTS

Prior to the early 1980's, Blue Ridge maintained several pay-roll deduction plans for its employees. One of the pay-roll deduction plans allowed employees to have funds deducted from their checks to be used by the "HELP" fund. At its inception, the HELP fund was an employee fund to aid needy families of injured employees. The fund also contributed to local charities. Blue Ridge also maintained a pay-roll deduction plan for employees to join "PAC." PAC is an organization which gives money to campaigns of politicians who support cooperative utilities. PAC funds political campaigns on the State and National level.

Blue Ridge is prohibited by 2 U.S.C.A. 44lb (West 1985) from directly contributing to political campaigns. Blue Ridge employees testified, however, that it encouraged its employees to contribute to the PAC fund. Sometime in the early 1980's, Blue Ridge became concerned that the pay-roll deduction plan for PAC violated federal law, and they discontinued the practice. As a result of discontinuing the pay-roll deduction plan for PAC, PAC membership at Blue Ridge dropped substantially. To increase the membership in PAC, a program was established where employee PAC membership was pay-roll deducted through the HELP fund.

Culler began working for Blue Ridge in 1982. At that time, Culler joined PAC and the membership dues were deducted from his pay check. When PAC dues were no longer pay-roll

deducted, Culler discontinued his membership. When Blue Ridge reinstated pay-roll deduction PAC membership through the HELP fund, Culler refused to join. About the time that Culler first refused to join PAC, he was transferred from a line crew to a right-of-way crew. Subsequently, Culler was fired.

Culler claims that he was fired because he refused to join PAC. The trial judge held that as a matter of law, Culler did not have an actionable claim under the public policy exception to the doctrine of employment at will. Further, the trial judge, sitting without a jury, found that the evidence did not support Culler's claim.

## LAW/ANALYSIS

Two issue are presented on appeal. First, whether an employee has an action for wrongful discharge when the employee is terminated for refusing to contribute to a political fund. Second, did the trial judge err in finding the evidence did not support Culler's claim.

The doctrine of employment at will has been recognized in this State since *Shealy v. Fowler*, 182 S.C. 81, 188 S.E. 499 (1936). The doctrine in its pure form allows an employer to discharge an employee without incurring liability for good reason, no reason, or bad reason. *Ludwick v. This Minute of Carolina, Inc.*, 287 S.C. 219, 221, 337 S.E. (2d) 213, 214 (1985) (citing H.G. Wood, *Master and Servant* (1877) ).

In *Ludwick, supra* this Court joined a growing majority of state that recognize the "public policy" exception to the doctrine of employment at will. Under the public policy exception, an employee has a cause of action in tort for wrongful discharge where there is a "retaliatory discharge of the at-will employee in violation of a clear mandate of public policy." *Id.* at 219, 337 S.E. (2d) at 216.

The employee in *Ludwick* was forced to choose between disobeying a subpoena or losing his job. In *Miller v. Fairfield Communities, Inc.*, 299 S.C. 23, 382 S.E. (2d) 16 (Ct. App. 1989) *cert. denied* 302 S.C. 518, 397 S.E. (2d) 377 (1990), the Court of Appeals interpreted *Ludwick* to apply only to those situations where the employee must choose between a possi-

ble jail sentence or being fired.[1] *Ludwick*, however, is not so limited. The "public policy" exception in *Ludwick* extends to "violation of a clear mandate of public policy."

Chapter 17 of Title 16 defines "Crime Against Public Policy." Section 16-17-560 makes it a "crime against public policy" to fire any person in this State because of their political beliefs.[2] We believe that *Ludwick*'s prohibition of retaliatory discharge in violation of clear mandate of public policy of this State extends at least to legislatively defined "Crime Against Public Policy." Thus, if Culler was discharged because he refused to contribute to a political action fund, he would have a cause of action for wrongful discharge under *Ludwick* and S.C. Code Ann. § 16-17-560 (1976).

The trial judge, however, found that Culler was not terminated for refusing to contribute to PAC. Under *Ludwick* an action for wrongful discharge is an action in tort. *Id.*, 287 S.C. at 225, 337 S.E. (2d) at 216. An action in tort is generally an action at law, *Mortgage Loan Co. v. Townsend*, 156 S.C. 203, 152 S.E. 878 (1930), unless equitable relief is sought. *See e.g. Momeier v. John McAlister, Inc.*, 193 S.C. 422, 8 S.E. (2d) 737 (1940) (action for nuisance seeking special damages and injunction is action in equity). Here Culler testified that he was seeking money damages and not reinstatement. Thus, Culler was seeking legal damages making his action entirely an action at law.

In an action at law, the trial judge's factual findings "will not be disturbed unless a review of the record discloses there is no evidence which reasonably supports the [judge's] findings." *Sterling Development Co. v. Collins*, — S.C. —, 421 S.E. (2d) 402 (1992) (citing *Townes Associates, Ltd. v. City of Greenville*, 266 S.C. 81, 221 S.E. (2d) 773 (1976)). Blue Ridge employees testified that contribution to PAC was not a prerequisite to continuing employment at Blue

---

[1] We make no ruling on the ultimate result in *Miller*.

[2] § 16-17-560. **Assault or intimidation on account of political opinions or exercise of civil rights.**

Whoever shall assault or intimidate any citizen because of political opinions or the exercise of political rights and privileges guaranteed to every citizen of the United States by the Constitution and laws thereof or by the Constitution and laws of this State *or, for such reason, discharge such citizen from employment or occupation* . . . shall be guilty of a misdemeanor. [Emphasis added.]

Ridge. Further, there was testimony that Culler was terminated because of his "bad attitude." Thus, the trial judge's findings of fact are supported by the evidence and we affirm.

Affirmed.

HARWELL, C.J., and CHANDLER, FINNEY and MOORE, JJ., concur.